IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DANEFORD MICHAEL WRIGHT, ET AL., | ) ) ) | Civ. No. 11-00212 SOM/KSC |
| Plaintiffs, | ) ) | ORDER GRANTING DEFENDANT AMERICA SERVICING COMPANY'S |
| vs. | ) ) | MOTION FOR SUMMARY JUDGMENT |
| WELLS FARGO BANK, ET AL., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT AMERICA SERVICING COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION.**

Plaintiffs Daneford Michael Wright and Ellareen Uilani Wright are suing various defendants, including Wells Fargo Bank dba America's Servicing Company ("ASC"), in connection with a residential mortgage loan.  This court previously granted Defendants' motion for judgment on the pleadings on all of the Wrights' claims except a portion of one claim against ASC.  ASC now moves for summary judgment on the Wrights' remaining claim in this case.  The court grants the motion.

**II.     BACKGROUND.**

On December 21, 2005, the Wrights obtained a residential mortgage loan from New Century Mortgage Corporation ("New Century").  Compl. ¶ 11, ECF No. 1.  At the loan closing, the Wrights signed a Servicing Disclosure Form that said that the right to collect their mortgage loan payments could be

transferred to a loan servicer.  See Servicing Disclosure Form, ECF No. 47-4.  On June 1, 2006, ASC became the loan servicer.  Decl. of Denise Brennan ("Brennan Decl.")¶ 3, ECF No. 47.  On June 13, 2006, ASC notified the Wrights that it had become the servicer and instructed the Wrights to send all future payments to ASC.  See June 13, 2006 Letter, ECF No. 47-2.

The Wrights regularly paid ASC their monthly loan payments through October 2008, but submitted their November 2008 mortgage payment two weeks late, then missed their December and January payments.  Brennan Decl. ¶¶ 10-11.  On January 18, 2009, ASC sent the Wrights a default notice, informing them that "[u]nless the payments on your loan can be brought current by February 17, 2009, it will become necessary to accelerate your Mortgage Note."  Letter dated Jan. 18, 2009, ECF No. 47-6.

The Wrights brought their loan current by the February deadline, but missed their March and April payments.  Brennan Decl. ¶ 14.  On April 19, 2009, ASC sent the Wrights a second default notice, informing them that "[u]nless the payments on your loan can be brought current by May 19, 2009, it will become necessary to accelerate your Mortgage Note."  See April 19, 2009 Letter, ECF No. 47-7.  On April 30, 2009, the Wrights brought their loan current.  Brennan Decl. ¶ 22.  This was the last loan payment the Wrights submitted to ASC.  Id.

Meanwhile, the Wrights sent letters to their congressional representatives explaining their financial difficulties and inquiring about assistance in possibly refinancing their loan.  See Brennan Decl. ¶¶ 18-22, 29-30.  The Wrights' congressional representatives forwarded these letters, with the Wrights' permission, to ASC.  Id.  Reacting to those letters, ASC informed the Wrights that, although ASC had considered the Wrights for a loan modification, it turned out they were ineligible.  See Letter dated June 5, 2009, ECF No. 47-10.  ASC advised the Wrights that, given their financial difficulties, they might want to consider a short sale.  Id.  "Thereafter, ASC continued to work with Plaintiffs to arrange a possible short sale of their property.  Plaintiffs told ASC that they were planning to list the property with [a realtor] and authorized ASC to release information to her in order to facilitate the sale."  Brennan Decl. ¶ 26.  The Wrights, however, were unable to find a buyer for the property.  Email dated Sept. 1, 2010, ECF No. 47-12.

On June 21, 2009, ASC sent the Wrights a third notice of default, again informing them that "[u]nless the payments on your loan can be brought current by July 21, 2009, it will become necessary to accelerate your Mortgage Note."  Letter dated June 21, 2009, ECF No. 47-11.

On December 23, 2009, U.S. Bank filed a foreclosure complaint in state court. On December 8, 2010, the state court orally granted summary judgment and an interlocutory decree of foreclosure to U.S. Bank on the Wright property. The Wrights filed a voluntary Chapter 13 Petition on December 22, 2010. ECF No. 47-15. In keeping with the automatic stay triggered by all bankruptcy proceedings against a debtor under 11 U.S.C. § 362(a), the state court did not issue a written order.

On April 4, 2011, while both the bankruptcy case and the state-court action were pending, the Wrights filed the present action with this court. ECF No. 1. Their complaint named multiple defendants, including Wells Fargo and ASC, and asserted six claims: (1) violations of Hawaii's Unfair and Deceptive Trade Practices Act ("UDAP claim"); (2) violations of the federal Fair Debt Collection Practices Act; (3) fraud; (4) violations of the federal Racketeering Influenced and Corrupt Organizations Act and state law; (5) "non-consensual lien"; and (6) slander of title. Id. This court granted Defendants' motion for judgment on the pleadings with respect to five of the Wrights' six claims "on the ground that those claims, which [were] predicated on the alleged invalidity of the assignment of the Wrights' mortgage to U.S. Bank, are barred by the doctrine of res judicata." Order at 2, ECF No. 45. The court denied the motion for either judgment on the pleadings or summary judgment,

however, with respect to a portion of the Wrights' UDAP claim against ASC. Explaining why this portion of the Wrights' UDAP claim survived, the court noted:

> [T]he Wrights also allege that ASC engaged in unfair and deceptive trade practices in servicing the mortgage. They allege that ASC told them that ASC would not accept any payment for the home loan, and that any payment made would not be applied to their mortgage. ASC also allegedly withheld information about who actually owned the mortgage. These allegations do not rest on the alleged invalidity of the assignment.
>
> . . . .
>
> Identifying as deceptive ASC's alleged representations that ASC would not accept payment for the loan and that if they made payment it would not be applied to their mortgage, the Wrights say ASC caused them to stop making mortgage payments with any confidence and to breach their mortgage agreement. Even taking into account the heightened pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure, the court concludes that the Wrights sufficiently state a claim against ASC . . . that does not involve the validity of the assignment to U.S. Bank.

Id. at 20-21(citing Compl. ¶¶ 19, 22-22, 23, 40, 43-44 (quotation marks omitted). Although Defendants had argued at the hearing on their earlier motion that they were entitled to summary judgment on this portion of the Wrights' UDAP claim, the court noted that Defendants had failed to establish "the absence of triable issues with respect to ASC's alleged misrepresentations that are

5

unrelated to the assignment." Id. at 22 ("Indeed, the moving papers do not even mention those alleged misrepresentations!").

Now before this court is a new motion by ASC seeking summary judgment on the remaining portion of the Wrights' UDAP claim (the "Motion"). ECF No. 46. ASC now argues that (1) the Wrights are judicially estopped from bringing this lawsuit because they failed to disclose their claims against ASC in their Chapter 13 Petition, and (2) the Wrights' UDAP claim fails as a matter of law.

Approximately three weeks after ASC filed the Motion, the Wrights filed a voluntary Chapter 7 Petition listing a "potential claim" against ASC. See Br. Pet. 12-01834 at 14, ECF No. 1. The Wrights assessed the "Current Value of Debtor's Interest in Property" as "0.00." Id. In its Reply, ASC complained that the Wrights' new Chapter 7 filing did not cure the Wrights' earlier failure to disclose their claims against ASC.[1]  Reply at 5-7, ECF No. 56.

---

[1] ASC also raises the issue of whether the Wrights have standing to bring the instant action in light of their new Chapter 7 filing. Reply at 5 fn.2. Given the federal statutory claims in this case, this court had subject matter jurisdiction over this case from the outset. The court therefore had the discretion to exercise supplemental jurisdiction over state-law claims. 28 U.S.C. § 1367. The "standing" issue that ASC raises goes to whether the Wrights satisfy statutory prerequisites for bringing their claims, not to "standing" relating to subject matter jurisdiction. The court cannot proceed to address the merits of a claim brought by a party that lacks constitutional standing. Such a claim would not be a "case or controversy," as required by Article III of the Constitution. However, statutory

6

**III.     STANDARD OF REVIEW.**

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment."  Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex, 477 U.S. at 323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine

---

"standing" is not to be confused with constitutional standing. ASC raises its statutory "standing" issue for the first time in its reply memorandum because the Chapter 7 Petition had not been filed at the time ASC filed its Motion.  Given the granting of the Motion on other grounds, the court need not address the statutory standing issue.

issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. Nissan Fire, 210 F.3d at 1102-03. On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Miller, 454 F.3d at 987. This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v.

Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

**IV.     ANALYSIS.**

    **A.   Judicial Estoppel.**

ASC urges the court to rule that the Wrights are judicially estopped from bringing their claim against ASC. Motion at 7-12; Reply at 3-7. In invoking the doctrine of judicial estoppel, ASC points to the Wrights' failure to disclose their claims against ASC in their Chapter 13 bankruptcy schedules. Motion at 7-12. The Wrights' Chapter 13 Petition noted vaguely that the Wrights might have a "potential lawsuit against U.S. Bank" with an "unknown" current value. Motion at 10. ASC also argues that judicial estoppel should apply because there is no evidence that the Wrights made any attempt to comply with their continuing obligation as debtors to disclose potential claims and assets throughout their bankruptcy proceedings. Id. 9-10. In response, the Wrights argue, "This Federal case is clearly reported correctly to the bankruptcy court and trustee."

Opp'n at 4, ECF No. 54.  In its Reply, ASC argues that the Wrights' second bankruptcy petition does not cure their alleged earlier failure to disclose.  Reply at 5-7.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  Hamilton v. State Farm Fire & Cas. Co, 270 F.3d 778, 782 (9th Cir. 2001).  The United States Supreme Court identifies three factors applicable to a determination as to whether an issue is judicially estopped:

> First, a party's later position must be clearly inconsistent with its earlier position.  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.  Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity.  A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (internal citations and quotations omitted).

Viewing the record in the light most favorable to the Wrights, the court cannot say that the Wrights' earlier Chapter 13 Petition is "clearly inconsistent" with their position in the

10

instant lawsuit.  See New Hampshire, 532 U.S. at 750.  There is no dispute that the Wrights listed a "[p]otential lawsuit against U.S. Bank" valued at an "[u]nknown" amount when they filed their Chapter 13 Petition.  See B.R. 10-03893, Dkt. No. 15 at 5 of 32.  While ASC complains that the Wrights "failed to disclose their claims against ASC" in their Petition, Motion at 7, none of the cases ASC cites supports the proposition that the Wrights were obligated to provide greater detail than they did.  Rather, all of the cases that ASC relies on involve debtors that made no mention at all of existing claims as potential assets.  The Wrights' failure to detail their claims is distinguishable from total silence on the matter.  By noting the "[p]otential lawsuit" in their Chapter 13 Petition, the Wrights gave notice of a lawsuit that, once filed, would become a matter of public record.

   Of course, ASC is correct in saying that the Wrights should have updated their Chapter 13 Petition when they filed this lawsuit.  See Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 785 (9th Cir. 2001) ("The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceedings.").  But viewing the record in the light most favorable to the Wrights, the court concludes that the record does not establish that the Wrights adopted a "clearly inconsistent" position by filing this lawsuit and failing to

11

update their Chapter 13 Petition.  The Wrights are proceeding <u>pro se</u>.  While ignorance of the law is no excuse, the Wrights' Chapter 7 Petition, filed shortly after ASC had complained about the Wrights' shortcomings in this regard, suggests that the Wrights were trying in good faith to comply with their obligations to notify the Bankruptcy Court of this action.

     ASC also complains that, among other things, the Wrights' Chapter 7 Petition listed the value of this case as "0.00," although the Complaint listed the amount in controversy as greater than $75,000.  Reply at 7.  ASC says, "The characterization of an active lawsuit valued at over $75,000 as a 'potential claim' worth $0 is far from a full and accurate disclosure."  <u>Id.</u>  ASC overlooks the timing of the Wrights' reference to a value of "0.00."  The Wrights provided that value in response to an instruction to list the "<u>Current</u> Value of Debtor's Interest in Property."  BR 12-01834, Dkt. No. 1 at 13 of 52 (emphasis added).  The Wrights, not having been awarded anything in this lawsuit, appear to have been trying to acknowledge that fact.

     ASC, as the movant, has the burden of showing that there is no triable factual issue.  ASC's judicial estoppel argument does not succeed in doing that.  First, it remains unclear whether the Wrights' Chapter 7 filing is "clearly inconsistent" with their position in the present lawsuit.

See New Hampshire, 532 U.S. at 750.  Second, this court has not been presented with any instance in which the Wrights have succeeded in having a court accept any earlier position.  Third, given the court's ruling on the merits of the UDAP claim, the Wrights are deriving no unfair advantage and not imposing an unfair detriment on ASC.  Accordingly, the court declines to grant ASC summary judgment on the ground that the Wrights' lawsuit is barred by judicial estoppel.

**B.   UDAP Claim.**

The Wrights' sole remaining claim in this case is that ASC "engaged in unfair or deceptive trade practices" in violation of Hawaii's UDAP law.  See Compl. at ¶¶ 19, 22, 23; Order at 23, ECF No. 45.  ASC argues that it is entitled to summary judgment on this claim because the Wrights have "failed to identify any practice that is unfair or deceptive and have failed to establish actual damages suffered as a result of ASC's alleged conduct." Motion at 13.

A deceptive act or practice under section 480-2 of Hawaii Revised Statutes is "(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." Courbat v. Dahana Ranch, Inc., 111 Haw. 254, 262, 141 P.3d 427, 435 (2006) (citations omitted).  "A representation, omission, or practice is considered

13

'material' if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." Id. (citations and quotation marks omitted).  The test is "an objective one, turning on whether the act or omission is likely to mislead consumers as to information important to consumers in making a decision regarding the product or service." Id. (citations omitted).

The Wrights have two allegations that remain in issue. First, the Wrights allege that they repeatedly tried to discover "who actually owned their mortgage, which ASC refused to reveal." Compl. ¶ 19.  Second, the Wrights allege that an ASC representative refused to accept a mortgage payment and informed the Wrights that if they made a payment it would not be applied to their loan.  Id. ¶¶ 21-22.

With regard to ASC's alleged failure to disclose the owner of the Wrights' loan, there is no evidence that ASC's alleged conduct was either misleading or material.  It is undisputed that ASC was the loan servicer, and the Wrights were consistently informed that all payments and correspondence regarding their loan should be directed to ASC.  It is also undisputed that ASC did in fact disclose that U.S. Bank owned the Wrights' loan on April 28, 2009.  Compl. ¶ 24, ECF No. 1.  It is not clear how any alleged delay in disclosing this information was either misleading or material, especially as the Wrights do

14

not show that ASC had an affirmative duty to disclose this information.  See, e.g., Skaggs v. HSBC Bank, 2011 WL 3861373, at *16 (D. Haw. Aug. 31, 2011).  Finally, the Wrights have not provided any admissible evidence indicating that they suffered damages because of this alleged delay.

The Wrights also allege that "[o]n or about April 20, 2009, ASC represented to Plaintiffs that ASC would not accept payment for the loan" and that ASC "represented to Plaintiffs that if they made payment it would not be applied to their mortgage."  Compl. ¶ 22.  According to Mr. Wright, this conversation took place when he was two months behind on his loan, and the ASC representative informed him that any partial payment would be placed in a separate account and not applied to his loan until his payment was fully current.  Email dated June 28, 2010, ECF No. 47-12.  The Wrights point to no evidence that the ASC representative's position during this phone call violated or inaccurately reflected the terms of the Wrights' mortgage. See Mortgage Agreement, ECF No. 47-5 (providing that the Lender may accept partial payments insufficient to bring the loan current, "but Lender is not obligated to apply such payments . . . until Borrower makes payment to bring the Loan current").  A statement that accurately and fairly represents the terms and conditions of a mortgage agreement are not "unfair" or "deceptive" under section 480-2.

The court therefore grants ASC summary judgment on the remaining portion of the Wrights' UDAP claim.

## V.     CONCLUSION.

The court grants ASC's motion for summary judgment. Because this order disposes of all matters remaining in this case, the Clerk of Court is directed to close this case and to enter judgment for Defendants.

IT IS SO ORDERED.

DATED: Honolulu, December_ 20_, 2012.



/s/ Susan Oki Mollway

Susan Oki Mollway
Chief United States District Judge

Daneford Michael Wright, et al. v. Wells Fargo Bank, et al., Civ No. 11-00212 SOM/KSC; ORDER GRANTING DEFENDANT AMERICA SERVICING COMPANY'S MOTION FOR SUMMARY JUDGMENT.